Good morning. May it please the Court. My name is Vanessa Bravo and I, together with Petitioner Franco Belizaire. I will be addressing questions related to the applicable standard review. I will also be addressing how the IJ erred as a matter of law and find that the specific harm experienced by the petitioner was insufficient merely because it was also representative of general levels of violence. My co-counsel will be addressing how that harm was on account of an imputed political opinion and she will also be addressing the unreasonableness of relocation in this case. We are asking the Court to apply a de novo review standard. The IJ made an explicit determination that Petitioner testified credibly so that what we have here are essentially undisputed facts. This Court has held and seen this year in Madonado Cruz that when the issues do not involve questions of proof but whether the harm the respondent fears is on account of political opinion, resolution of the matter involves a question of law and as such the review should be de novo. However, the Court does not need to make an explicit determination of the standard of review because we will show that even under the more deferential substantial evidence standard that the petitioner, that a reasonable fact finder would find the petitioner had the requisite fear of persecution. The IJ erred as a matter of law in finding that the specific harm experienced by the petitioner was insufficient merely because it was also representative of general levels of violence. We are asking the Court today to hold in accordance with its 2004 holding in Bobola v. Ashcroft that the error here is essentially that the IJ made a faulty evidentiary consideration. Here the IJ did not make an explicit comparison of country condition reports to petitioner's credible testimony. As such he came to the faulty conclusion that the harm experienced by petitioner was on account of general levels of violence. He characterized petitioner's persecutors as being as a result of crime in the area. He referred to Chimo which is a unit of the Haitian National Police as continually referred to them as being just a group. What harm was actually suffered by petitioner? Over the course of several years there was several incidents that while individually may not rise to level of persecution in the aggregate does rise to level of persecution. The petitioner was singled out as being somebody that was against the Lavalos party. When he did not sign his name onto a party list he was told by Chimo as being. Seems to be evolving toward the issue which I understand your colleague is going to address which is the connection. I'm going to be focused on the first part because let's face it anybody in Haiti has got to be out of his mind if they didn't want to be out of there. What was it that was distinctive of what happened to this petitioner that causes it to rise to the level of persecution? He started trying to escape from Haiti before very much had happened. Mr. Balazer has left Haiti now three different times and each time essentially what happened is that he was not able to live any semblance of a normal life. Through associations he was perceived as being somebody that was either for or against the Lavalos government depending on his association at the time. In the first instance his life was threatened. He was perceived as not being as being anti-Lavalos. His life was threatened so was that of his roommate who was considered to be who was somebody that was trying to be recruited to that party and he was he was forced to leave. When he returned the second time he attempted to resume a normal life. Attempted to go back to school but because of the neighborhood in which he in which he grew up in or in which he was trying to attend school he was perceived as being as being again anti-Lavalos. Again like to focus not on what he was perceived and why somebody might be aiming at him but what did he actually suffer that constitutes persecution? I see. Not only was his life threatened but also he was not able to to in any way have a normal life. He wasn't able to be in school because there was threats against his life. Later on while working at the port he was perceived to be somebody who was actually pro-Lavalos. He was tied up. He was beat up. Had two of his teeth knocked out. He was arbitrarily detained for a month and then he was only let out when he renounced his loyalty to Aristide. So in response to Judge Cupson's questions you're saying he was tied up and beaten. Is that persecution? Yes. This court has held that actual physical harm is not necessary to rise to the level of persecution but here Petitioner experienced several instances of threats to his life. He experienced arbitrary detention. He experienced actual physical harm and additionally there are some elements of economic persecution. He was not able to continue his employment at the port. He was not able to attend school because of where he went to school people perceived him as being part of group 15 which was a group that was considered to be anti-Lavalos. So in the collective the Petitioner has experienced persecution. This court has held in Babala that while single instances of persecution may not rise to the level of persecution in the aggregate it can. Thank you I'm going to let my co-counselor continue. My name is Mary Thwaites and may it please the court. The IJ and the BIA were unreasonable in finding that there was no nexus between the harm that Mr. Bellazer endured and the political opinions that were imputed to him by both the CIMO, the political unit of the police and the cannibal army. The nexus can be identified by looking at the record and by looking at the case law that this court has put forward in Desir and Singh and Deval. Like in Singh this court should find that the persecutors attributed political opinions to the applicants and acted on those attributions. Did Mr. Bellazer apply for asylum the first two times he entered the country? Yes he did your honor. Is that in the record before us? Yes it is your honor. On the second time he was sent back on the basis that country conditions had changed because President Preval had been elected. However when he returned political violence flared once again and the cannibal army at that time began to target people who were pro-Lavalas and because Mr. Bellazer worked at the port the cannibal army assumed that he too was a Lavalas supporter and that was when they tied him up and beat him and kicked his teeth out and then imprisoned him for over a month. Further the BIA depends on the Gormley case and this case, the case at bar is significantly different from the facts in Gormley. In Gormley an objective fact finder could determine that there was alternate motives that are not statutorily protected such as that there was an economic motive and that Mr. Gormley was not being attacked and persecuted because of his race. He did not know his attackers, they did not know him and there's nothing in the record to identify that they had made any kind of associations about him. You know this court points out in Deval and Singh that where there are significant relationships between the victim and the persecutor and where specific acts or associations have caused a political opinion to be attributed to the applicant that there can be a finding of a nexus between the harm experienced and Mr. Belazer testified credibly. The judge found no issue with his direct and specific testimony and in addition the documentary evidence that he provided buttressed and actually gave context to a finding that he was specifically targeted and that he experienced that he was targeted because of opinions imputed to him by both the CIMO unit and the cannibal army. Within the context of a very politically polarized Haitian society his claims that he was specifically targeted are actually more credible and more serious because at that time they were recruiting young males to join these parties and to be very clear about their alliances and as a result when they acted against Mr. Belazer they were acting based on their perceptions of his opinions. Further the IJA was unreasonable, made a finding that him going back to Haiti would be and relocating would be reasonable and there's just not enough evidence to show that he would be reasonable and he doesn't make a finding as to whether these actors were government actors or not which is critical because where the persecution is carried out by government actors then there's a presumption of unreasonableness. I'm going to reserve. Thank you for the argument and we'll hear from Mr. Hardy. Okay thank you your honor, counsel and may it please the court I'm Joseph Hardy again appearing for the government. One thing first, whatever the immigration judge decided the board only decided this case on the nexus issue so whether it rose to the level of persecution or not is not before the court now. I think the court sees that from the record. So I'll just deal with the fact that the two issues were already decided by the agency and immigration proceedings before the first one was entered in absentia and so he couldn't appeal that. The second was decided on the merits but he didn't appeal it or petition to this court so although this court hasn't decided that issue I would say that it's the law of the case since he didn't exhaust his ability to appeal it to this court. So in my view the only issue Well my understanding after the second asylum petition was denied because of change in country conditions Well on the merits which were decided he didn't seek review of that decision before this court following that second asylum decision so that's why I'm arguing as far as those issues I would say that it's the law of the case that those issues are not persecution and even if you note nothing happened to him in those decisions as Judge Clifton said he got out of the country before anything even came close to happening to him. What you say is law of the case from that that affects us today because as you indicated already nexus is the only issue we have Nexus is the only issue as to this September 29, 2004 decision which caused him to leave said he went back to the port where he worked paid someone to get on a boat which happened to be bound for the third time to Miami. I guess third time's the charm here. So as far as that one if you note in the asylum application in the attached statement on page 5 he notes that the group that attacked him were an anti say they were petitioner says that they were an anti-Lavalas group. The reports in the record that petitioner submitted himself say that they're a gang. They're called the cannibal army but they're not an army per say as in the Haitian National Police or our army is here. So when I get to the relocation argument it would be relevant to say that it's not the government that has done anything to him. He can't relocate to different areas in the country. However, as far as that the only thing he assumes is that he states that Rene Provile is in power. Rene Provile came into power in 2004 to 2006. My understanding is that he's not associated with John Pertron Aristide who was deposed with the help of our government in 2002 I believe. So it's a different issue here. The fact that these people are anti-Lavalas the identity of your attackers does not mean that whatever happens to you is on account of any political opinion. As I believe Judge Clifton noted, Haiti is one of the poorest countries in the world. It is the poorest country in the western hemisphere. Conditions there are not great by any means. They're not good by any means. They're bad. There's a lot of violence there. There's a lot of crime. And the issue here is these anti-Lavalas groups are just young people and if you'll note, this person here confused him with someone he, Mr. Belisier noted that his name, he said that his name was Franco to this person who happened to be wearing a black T-shirt on that day. Well, the person confused him with someone named Franco Cade who was the brother of someone named Ronald Cade. If you'll note, that Ronald is not the Ronald that was mentioned in the earlier case, in the 99 and 2000 issue. So it's not that the person was confusing him as being a friend of that Ronald. This is a completely different Ronald Cade. He's obviously not Franco Cade. And if you'll note, he says that the person just tied him and his friends up and somehow his friends were able to get away by just cutting the rope and get away. If the person was there about to do something to him, how did he get away? It's a question of whether, it's a nexus problem. Just because this person might not like the government, if you get, to be honest, if you get beat up by someone in the United States who happened to not like the current presidential administration or you're being persecuted on account of... Did the IJ find him to be not credible? Adverse credibility wasn't an issue in this case. So he found him, he at least found him to be not credible, but he found him to be credible. Yeah. Not to persecute. So how do we then escape the fact that if he was credible, that when he said that, that, that, that, that the persecutors were motivated by political views that they attributed to him? I think if you notice the, in both the petitioner's first brief and in the reply brief, they say that it imputed a political opinion to him, but he never says what the imputed political opinion is. They go off of the first one, while it was associated with my friend Ronald, who at least used to be a member of La Valasse. Well, Ronald is not, that issue is not here in this third, this third case that we have. And, you know, when point when, well, what political opinion is imputed to you? You say, well, they assume I'm La Valasse because I'm a young male. Well, the, to be perfectly honest, the average life expectancy in Haiti is not that high. So just about everyone... Whether it's a logical imputation or not, at least if you take his testimony, and they, what I believe is, I guess, is before the third departure, and that's the one that I'm principally focused on, he testified that they came to him and said, you are La Valasse. What are you doing here? And, and the subsequent beating up and detention and so forth, which for current purposes we have to accept as, as true, seems to be linked to that, that statement or that accusation, whether right or wrong, if in fact the, the tormentors were motivated by what they perceived to be his status, that is, he is La Valasse, how is there no nexus? I think if you, if you note the, one, I'd like to point out again that the man who attacked him and his friends that day was not government. So the, the very, again, the very fact that, you are, they're accusing him of being La Valasse, or accuse him of being La Valasse, they're not focusing on Franco Belisier. They're thinking he's someone named Franco Cade. So, and I point out that he's not a, that they're not government. That shows that he can relocate  But if you believe what he said, as Judge Clifton had just read to you, how can we hold that there's no nexus? It's imputed from, from his testimony, which is credible. Why isn't that an imputation of political opinion? Well, that's just it. They're not imputing it to Franco Belisier. They're imputing it to someone named Franco Cade, who happened to live in the Port-au-Prince area. What part did he say? He said, in his testimony, was that they, when, when the person asked him who he was, he said, my name is Franco. The person assumed that he was Ronald Cade's brother, someone who lived in that area. It was asked of him, well, how do you, well, who's, I think his attorney asked him, well, who's Ronald Cade? Ronald Cade has a brother named Franco Cade, and they thought I was him. So, you know, this isn't a government group that could get him anywhere. This is some, one man in a black t-shirt who just got it wrong, thought he was someone else because he said his name was Franco. The thing is, apparently he doesn't, the guy who attacked, or tied him up, doesn't even know who Franco Cade is, if by looking at this one guy, he's assuming... Because they perceived him to be, whether it was Franco or some other person, a lavalasse. Because he was working for a company that was owned by a lavalasse supporter. He actually was not working for the company that was a lavalasse supporter. He, his testimony was that he worked at the port, and one part of the port was run by the government. The other part was run by the government, which was lavalasse. The other part was a private company. He worked for the private company, and this non-governmental actor, this one person, assumed that he was lavalasse, not because he worked at the port. For a company owned by someone they thought was a lavalasse supporter. That he thought was a lavalasse supporter. He thought, it wasn't the, the issue wasn't that he worked at the port. The issue was that he thought that he was a friend. He was lavalasse. I'm sorry? That he worked for a lavalasse supporter, and therefore he was... They assumed that he was working for a lavalasse supporter because they thought he was Franco Cade, not because he worked at, I see my time has expired, so I'll finish with this, but they, again, they assumed he was a lavalasse supporter because they thought he was Franco Cade, not because he happened to be working at the private part of the port. He obviously didn't, by his own testimony, he didn't work for the lavalasse government side of the port, so the, the imputation, if any, was because they thought he was somebody named Franco Cade, not because he is someone named Franco. If they're incorrect in their imputation, you're saying that forecloses him from relief? I think... Just because they're mistaken, when they go after somebody and beat them, and think he's wrong, does that mean that he is foreclosed? I would say yes, because you have, we cite in our brief, I believe it's pronounced Ochav or Okav, you have, and Ochav was citing Sanger, you have to prove that a political opinion was actually imputed to you. He showed that it was imputed to someone named Franco Cade, not Franco Blasier. But they, it was imputed to somebody they tied up and beat. They tied, well, they assumed he was, they also tied up his two friends, so, you know, the fact, some gang members, I guess, apparently thought they were beating up three punks on the street, or something like that, it had nothing to do with, assuming that he was the political pain. And again, I've noticed that it's not a government actor, he hasn't shown that he can't relocate, it's simply that he says, well, if I go somewhere, they think because I'm a young man that I'm Shamir, well, the cannibal army, he hasn't said, is all around Haiti. He mentioned that the, that is the petitioner's burden. If you don't prove the three things, that you were persecuted on account of a protected ground, and that the government is unable or unwilling to control, you still have that burden to prove that it's unreasonable for you to relocate. Simply saying that I don't know anyone there, and that I'm young, so people assume I'm something called Shamir, does not say that it's unreasonable. Each time he's gone back to Haiti, he's been able to find a pretty good job, so it's not unreasonable for him to relocate, and I apologize that I'm well over my time. We took you there. Thank you. Without any other questions, I'll sit again. Actually, I'll walk up, but thank you. Since we did take him there, and took you there, too, if the petitioner wants another one minute. Let me just ask one quick question. Whose burden is it to show that the person can be relocated? It's the government's burden, Your Honor, and the government has not met that burden. There is no information on the record, no evidence on the record to show that, because once persecution is established, the burden shifts to the government to prove that either country conditions have changed significantly, or that relocation is reasonable. Well, if the persecution, if the beating, detention, whatever else, is linked to him either being mistaken for somebody who's in a given area, or working in a certain portion of the port, wouldn't it be logical to say, if you're not in that part of the country, if you're not working at the port, then the perception or the imputed political opinion is not going to exist. Well, Your Honor, in this case, the cannibal army, who was the group that persecuted him at that time, they can be seen as a government actor, thereby creating the presumption that relocation is unreasonable throughout the entire country. And that's because the government was not able to control the cannibal army. And under De Seer, this court held that it's not just an actual government actor that creates that presumption, it's also a party that the government cannot control, or has acquiesced any power over. And in this instance, they were former military, and they were able to, the country condition reports and the other documentary evidence indicate that the government was not able to control these people, and they were making arrests, and in some cases, actually killing people based on their strength and the fact that they had unchecked power. And the government's reliance on the Ochave case is misplaced because the Ochave case, when Mr. Ochave was attacked, they did not know who they were attacking, and they did not make any associations of any kind of political affiliation whatsoever. In this instance, however, it's very clear that they declared to Mr. Belzer that he was La Valasse, and that in addition to that, he, the mistaken identity is a moot point because he was taken from the port twice, proving that it was based on the association that they believed port workers to be La Valasse. And there's no indication on the record that he worked either for the government or for the private company, because, and it would be pointless as well, Your Honors, because both were attributed as being La Valasse supporters. So for either one, he was still identified as a La Valasse supporter. And we thank you for the argument, thank both sides for the argument, commend our student practitioners for an excellent presentation, and we'll move to, we'll submit this case for decision and move to the next case in the calendar for
judges: Hug, Clifton, Roth